UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LISA T., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-469-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Lisa T. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Plaintiff filed a motion for summary judgment and brief in support (*see* ECF Nos. 12, 13), in response to which the Commissioner filed a motion for judgment on the pleadings and brief in support (*see* ECF Nos. 16, 16-1).  Plaintiff also filed a reply brief. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 12) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on July 12, 2018, alleging disability beginning June 3, 2015, (the disability onset date), due to "knee problems and migraines." Transcript ("Tr.") 15, 229-35, 236-241, 262. The claims were denied initially on

November 1, 2018, after which Plaintiff requested a hearing. Tr. 15. On November 1, 2019, Administrative Law Judge Sharda Singh ("the ALJ") conducted a video hearing from White Plains, New York. Tr. 15. Plaintiff appeared and testified from Niagara Falls, New York, and was represented by Andrew S. Youngman, a non-attorney representative. *Id*. Linda A Stein, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. At the hearing, Plaintiff amended her alleged onset date to February 16, 2017. *Id*.

The ALJ issued an unfavorable decision on December 24, 2019, finding that Plaintiff was not disabled. Tr. 15-23. On February 8, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 24, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 24, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since February 16, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: bilateral knee replacement; lumbar fusion; migraine headaches and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except she can never climb ladders ropes and scaffolds but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She would require a sit/stand option after 20-30 minutes, with standing 1 to 2 minutes, then sitting. She must avoid loud noises, bright lights above office lighting and workplace hazards.

6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Tr. 15-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on July 12, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 23. The ALJ also determined that based on the application for supplemental security benefits protectively filed on July 12, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ's RFC finding did not properly account for "all associated limitations" arising from Plaintiff's migraine headaches. *See* ECF No. 13 at 11-20. More specifically, Plaintiff contends that the ALJ improperly evaluated the persuasiveness of the opinion evidence (*see id*. at 15-17); failed to address Plaintiff's need to discontinue activity and rest during her headaches (*see id*. at 17-18)); and failed to address Plaintiff's objections and rebuttal evidence to the VE testimony regarding the RFC limitation that Plaintiff must avoid "bright lights above office lighting" (*see id*. at 18-20).

Plaintiff next argues that "[t]he ALJ's credibility finding is generally flawed" because the ALJ's findings regarding Plaintiff's impairments and work-related limitations, and the medical opinions supporting those limitations, are inextricably intertwined with the ALJ's evaluation of whether Plaintiff's self-described limitations are consistent with the record. *See id*. at 20-22. According to Plaintiff, the ALJ's failure to consider Plaintiff's strong work history is "only one relevant additional fact that should have informed the ALJ's credibility finding." *See id*.

Finally, Plaintiff's argues that the ALJ's decision is constitutionally defective because the Commissioner, from whom the ALJ and the Appeals Council derive their authority, was not constitutionally appointed. *See id*. at 22-23.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

### A. Plaintiff's Constitutional Argument Fails.

The Court first addresses Plaintiff's constitutional argument. This argument sporadically appears albeit with little success.  Essentially, Plaintiff challenges the constitutionality of the removal restriction in 42 U.S.C. § 902(a)(3), arguing that actions taken by the Commissioner and those acting under his leadership are void or invalid due to the unconstitutional removal provision. *See id*. As discussed further below, this Court and numerous other courts have rejected similar constitutional challenges where the only alleged injuries are caused by officials subject to the challenged removal restrictions, and where Plaintiff cannot show that Section 902(a)(3)'s removal restriction affected the determination of her claim in any way.

Relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau ("CFPB")*, 140 S. Ct. 2183 (2020) ("*Seila Law*"), Plaintiff argues that her claim for disability benefits was decided under an unconstitutional delegation of authority to the ALJ. *See* ECF No. 13 at 22-25. In *Seila Law*, the Supreme Court held that the authority of the CFPB director, who was removable by the President only for cause, violated constitutional separation of powers principles because the CFPB's director was vested with significant executive power and "who was neither elected by the people, nor controlled (through the threat of removal) by someone who is." *Seila Law*, 140 S. Ct. at 2203. Plaintiff alleges that the structure of the SSA is identical to that of the CFPB, because the

Commissioner is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ("neglect of duty or malfeasance in office"), 42 U.S.C. § 902(a)(3), making SSA's structure unconstitutional under *Seila Law*, as it violates separation of powers. *See* ECF No. 13 at 22. Accordingly, argues Plaintiff, former Commissioner Andrew Saul's delegation of authority to the ALJ and the Appeals Council was unconstitutional, rendering the adjudication of Plaintiff's claim for disability benefits likewise unconstitutional and depriving him of a valid administrative adjudicatory process. *See id.*

As explained by the Supreme Court in *Seila Law* and *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the specific sections of the governing removal statutes that violated separation of powers in these cases were separate and severable from other provisions governing the operations of the CFPB and the Federal Housing Finance Authority ("FHFA"). Thus, unconstitutional for-cause removal challenges *alone* will not automatically serve to invalidate the ALJ's decision. *See Collins*, 141 S. Ct. at 1788–89. The unconstitutional provision must have caused "compensable harm." *See Collins*, 141 S. Ct. at 1789. As the majority explained in *Collins*, while *Seila Law* was "all but dispositive" on the removal question, it does not dictate that the Court should invalidate as unconstitutional the challenged decision or act. *Collins*, 141 S. Ct. at 1783.

Although the Supreme Court in *Collins* did indicate that it was possible for a party to establish "compensable harm" based on a separation of powers violation in a removal statute, the Court also held that the "compensable harm" would have to have a direct nexus to a separation of powers violation. *Id.* at 1788-89. Here, the Court finds no conceivable direct nexus between the ALJ's adjudication of Plaintiff's disability claim and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Beyond arguing a constitutional taint flowing from §902(a)(3), Plaintiff fails to point out which, if any, defective regulations were promulgated

in this case, how they applied to her claim, and how they affected the outcome such that she suffered a compensable harm. While it may be remotely conceivable that this constitutional defect could cause compensable harm, Plaintiff here has not shown that connection. Plaintiff's allegations merely amount to general dissatisfaction with the outcome of the adjudication of her claim. Accordingly, Plaintiff's constitutional argument is overruled.

### B.  Substantial Evidence Supports the ALJ's RFC Determination.

Plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence. *See generally* ECF No. 13. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective

evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera*, 697 F.3d at 151 ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§

404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on July 12, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain

how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff contends that her headaches cause work-related limitations not accounted for in the ALJ's RFC. *See* ECF No. 13 at 3-18. While Plaintiff agrees that the RFC's environmental limitations relating to her migraine headaches (avoiding loud noises and bright lights above office lighting) are appropriate, she claims that the record supports additional off-task/absenteeism limitations. *See id*. at 12. Contrary to Plaintiff's assertion, however, the record does not support any greater limitations. Rather, the ALJ properly exercised her discretion in resolving the evidentiary conflicts presented in the opinion evidence of record and assessed an RFC that is supported by substantial evidence.

Plaintiff contends that the ALJ never explicitly addressed her need to "absent herself from activities" for lengthy periods of time during the most severe headaches. *See* ECF No. 13 at 12-14. She also contends that, to support her finding that Plaintiff's headaches did not result in disability, the ALJ cited diagnostic findings which did not undermine the debilitating and frequent nature of Plaintiff's headaches. *See id*. However, contrary to Plaintiff's contention, the ALJ recognized Plaintiff's reports in 2018 and 2019 of frequent headaches that were triggered by bright lights at the workplace. Tr. 21, 1010, 1022, 2015, 2016, 2029, 2471. The ALJ also properly noted mostly benign objective findings, including a normal MRI of the head dated September 2018; unremarkable cervical spine x-rays; and normal neurology visits in 2019 demonstrating a steady gait, no neurologic disturbance, and headaches in the context of sleep apnea with an 80% sleep efficiency. Tr. 21, 907, 1028-30, 2331. These findings all support the ALJ's conclusion that Plaintiff was able to perform at least a range of sedentary exertion with the previously noted limitations.

Plaintiff further argues that the ALJ "unreasonably" found Plaintiff's treating source opinions unpersuasive and the state agency administrative findings persuasive. *See* ECF No. 13 at 15-18. Treating neurologist Nyathappa Anand, M.D. ("Dr. Anand"), submitted two medical source statements, on October 2, 2019, and November 20, 2019.  Tr. 2148, 2471-75.  In November 2019, Dr. Anand opined that Plaintiff's frequent, intractable migraine headaches would cause Plaintiff to be absent from work more than four days per month and off task more than two hours in an eight-hour workday. Tr. 2471-75. The ALJ found this opinion unpersuasive because it was inconsistent with the conservative neurologic treatment, Plaintiff's reports that medication made her migraine headaches better, and the absence of emergency department visits for migraines. Tr. 22. Upon review, the Court finds that the ALJ's rationale is supported by the record.

For example, in March 2017, Dr. Anand noted Plaintiff's complaints of frequent headaches but did not preclude her from working, or otherwise limit her functioning. Rather, Dr. Anand prescribed medication, acknowledged Plaintiff's report that "bright lights is one of the [headache] triggers," and recommended that she wear a visor and/or sunglasses at work to prevent frequent headaches. Tr. 2014-15, 2016. And, while Dr. Anand restricted Plaintiff's work hours to 25 per week in May 2017, this restriction was not based on migraines, but on her back impairment. Tr. 2030. Further, as Plaintiff acknowledged, one month after her February 2018 back surgery, she told Dr. Anand her headaches were "much better." *See* ECF No. 13 at 9 (citing Tr. 1006).

When Plaintiff next saw Dr. Anand in July 2018, she reported that her main concerns were neck pain and difficulty sleeping; Dr. Anand prescribed medications and asked Plaintiff to return in five months. Tr. 1008-09. As the ALJ noted, when Plaintiff returned the following month with headache complaints, Dr. Anand again prescribed medications and recommended a head scan, the results of which were unremarkable. Tr. 21, 1011, 1014. Finally, in March 2019, Plaintiff twice

reported improvement in her headache symptoms with medication and physical therapy. Tr. 1332, 1337. Thus, the ALJ properly considered the supportability and consistency of Dr. Anand's opinion and properly explained why she found the opinion unpersuasive. Tr. 22; *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c)(1), (c)(2); *Spina v. Colvin*, No. 5:11-CV-1496, 2014 WL 502503, at *8 (N.D.N.Y. Feb. 7, 2014) (ALJ properly considered that treatment improved migraine symptoms).

Plaintiff's assertion that the ALJ was obligated to consider "the 'most persuasive factors' set forth at § 404.1520c(c) that include longitudinal treatment history, and medical specialty, both factors which weigh heavily in favor of Dr. Anand's opinion" is similarly unavailing. *See* ECF No. 13 at 16-17. Contrary to Plaintiff's assertion, the ALJ was not required to explain how she considered Dr. Anand's medical specialty or longitudinal treatment history because she reasonably found the opinion unpersuasive under the particular circumstances of this case. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (adjudicator must discuss treating relationship and specialization when she finds that two or more medical opinions about the same issue are both equally well-supported and consistent with the record). The ALJ's analysis nevertheless indicates that she did observe that Plaintiff's migraine headaches were treated by neurologist Dr. Anand. Tr. 18, 20-22.

Plaintiff also takes issue with the ALJ's finding that Dr. Adnan's opinion was not consistent with his conservative treatment recommendations, asserting that Dr. Anand's opinion should not have been discounted merely because he recommended a conservative treatment regimen. *See* ECF No. 13 at 15-16. Plaintiff is wrong. *See Burguess v. Berryhill*, No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment); *see also Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (finding that evidence of only

conservative treatment, when considered with the record evidence as a whole, weighs against allegations of totally disabling functional limitations); *Guerra v. Colvin*, 618 F. App'x 23, 25 (2d Cir. 2015). Furthermore, as previously discussed, the ALJ did not base her finding solely on Dr. Arnand's conservative treatment. The ALJ also found the opinion was not persuasive based on Dr. Arnand's treatment records and mostly benign objective testing results, as well as Plaintiff's reports that her headaches improved with medication. Tr. 22.

Plaintiff also argues that the ALJ erred in evaluating the opinion of primary care provider Chad Szymanski, M.D. ("Dr. Szymanski"). *See* ECF No. 13 at 17. Dr. Szymanski submitted a medical source statement on October 23, 2019. Tr. 2150-53. He noted that he began treating Plaintiff six months earlier, and he opined that, due to sleep apnea, leg cramps, localized edema, low back pain, and migraine headaches, Plaintiff needed frequent rest periods; could occasionally lift and carry less than ten pounds, sit up to four hours, stand/walk less than one hour, and required a sit/stand option; could rarely climb ladders and scaffolds or balance; never kneel, crouch crawl or work around unprotected heights; needed a cane; and would be off-task 25% of the time and miss work four days per month. *Id*. Dr. Szymanski twice noted that Plaintiff's migraines were treated by a neurologist. Tr. 2150-51. The ALJ reasonably found the opinion only partially persuasive because it was not supported by, or consistent with, the doctor's own findings indicating full musculoskeletal ranges of motion, no strength or gait deficits and no indication of use of assistive devices to aid in walking. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) Tr. 22.

Plaintiff argues that the ALJ erred in evaluating Dr. Szymanski's opinion because she did not explicitly address the off-task limitation and absenteeism portions of the opinion. *See* ECF No. 13 at 17. However, as previously noted, the ALJ determined the opinion was only partially persuasive. Tr. 22. *See Nikki L. v. Saul*, No. 3:20-CV-934, 2021 WL 4066530, at *5 (N.D.N.Y.

Sept. 7, 2021) (finding that although a medical source's off-task and absenteeism opinion was not explicitly discussed by the ALJ, it was assigned partial weight under the prior regulations, and it is clear from the RFC finding that the ALJ rejected these limitations after noting that plaintiff experienced sufficient migraine pain relief with medications). In addition, Dr. Szymanski's extremely restrictive off-task and absenteeism limitations relate, in part, to Plaintiff's migraine headaches, a condition that Dr. Szymanski did not even treat (as Plaintiff admits). Tr. 2150-51; *see* ECF No. 13 at 17 (Plaintiff's brief noting that Dr. Szymanski's opinion "mostly addresses Plaintiff's other medical conditions which are not at issue here."). *See Shane C. v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-0895 (DEP), 2021 WL 5906236, at *5 (N.D.N.Y. Dec. 14, 2021) (an ALJ is not required to defer to a source's opinion merely because that source treated the claimant).

Moreover, Dr. Szymanski's opinion was provided on a check-box form with very little explanation or supportive text. This Court has previously noted that such forms are of limited evidentiary value. *See, e.g., Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020) (citing *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016); see also *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Tamara M. v. Saul*, 2021 WL 1198359, at *8 (N.D.N.Y. Mar. 30, 2021) (noting that, under the prior regulations, "check-box assessment forms" may be "reasonably accorded less weight" when they "do not explain how they reached these limitations"). Instead, the ALJ was entitled to independently evaluate the persuasiveness of Dr. Szymanski's opinion in accordance with the regulations, which the ALJ did in this case.

The ALJ also properly found persuasive the October 2018 opinion of state agency medical consultant J. Lawrence ("Dr. Lawrence"). Tr. 22, 97-106. Dr. Lawrence opined that Plaintiff could perform sedentary work with postural and noise limitations to account for Plaintiff's migraines. Tr. 97-106. Dr. Lawrence based his opinion on the available evidence dating back to 2015, including Dr. Anand's treatment records, the diagnostic testing results, and the examination and report of consultative examiner Trevor Litchmore, M.D. ("Dr. Litchmore"). Tr. 105-06.

As the ALJ explained, although Dr. Lawrence was a non-examining source, Dr. Lawrence had the opportunity to review a significant portion of the medical evidence, and his "findings [were] nonetheless consistent with progress notes indicating improvement to [Plaintiff's] back and knees with surgery, with some residual pain and the record noting migraine headaches triggered by certain environmental conditions." Tr. 22. The ALJ also found that Dr. Lawrence's opinion was supported by Dr. Litchmore's findings. Tr. 22, 1022-26. Dr. Litchmore examined Plaintiff in October 2018 and opined that Plaintiff had marked limitations to perform moderate to marked physical exertion and moderate to marked limitations lifting and carrying heavy objects stooping, bending, kneeling, crawling, climbing, walking up ramps and stairs lifting and carrying heavy objects while standing and/or walking. Tr. 2021-27. The ALJ found Dr. Litchfield's opinion "somewhat persuasive" because it was supported by his examination findings and consistent with other medical evidence of record. Tr. 22.

Dr. Lawrence's opinion was also consistent with the RFC for sedentary work with a noise restriction to accommodate Plaintiff's migraines headaches. Tr. 19. Furthermore, state agency physicians, such as Dr. Lawrence, are highly qualified individuals and experts in the evaluation of disability claims under the Act, and their opinions can be found to be persuasive where they are supported by the medical evidence of record, as here. *See* 20 C.F.R. §§ 404.1513a(b)(1),

416.913a(b)(1); *Tamara M.*, 2021 WL 1198359, *7 (under the new regulations, the opinions of all medical sources, including non-examining medical consultants, will be held to the same standard of persuasiveness of content)). To the extent Plaintiff argues that the off task/absenteeism portions of the opinions of Drs. Anand and Szymanski issued in 2019 undermine Dr. Lawrence's opinion, as previously explained, the ALJ properly considered these opinions and properly found Dr. Anand's opinion unpersuasive and Dr. Szymanski's opinion partially persuasive. Accordingly, the ALJ properly found Dr. Lawrence's opinion persuasive.

Plaintiff also argues that the ALJ "unreasonably" found Dr. Lawrence's opinion persuasive because Dr. Lawrence "did not have the opportunity to review over 1300 pages of medical evidence" submitted at the hearing level. *See* ECF No. 13 at 15. Plaintiff's argument fails. Later medical evidence does not render an opinion stale, as long as the "additional evidence does not raise doubts as to the reliability of [the] opinion." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order); *see Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5-7 (W.D.N.Y. 2021) (rejecting claimant's staleness argument where there was no change in symptoms during the period between the medical source's opinion and a surgery, and his condition improved slightly following surgery). Here, Plaintiff fails to show how the 1,300 pages of later-submitted evidence showed a significant deterioration in Plaintiff's functioning as it relates to her migraine headaches. *See Camille v. Colvin*, 652 F. App'x at 28 n.4 (finding that because the evidence dated after the state agency medical consultant's opinion did not differ materially from the evidence that the consultant did consider, it was found that the ALJ committed no error by relying on the non-examining physician). Furthermore, it is not the Court's duty to scour the record in a search for evidence that Plaintiff alleges supports her argument. *See, e.g.*, *CILP Assocs., L.P.*

*v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (internal quotation marks and citation omitted).

Plaintiff's argument that the ALJ erred when assessing the opinion evidence of record amounts to nothing more than an invitation for this Court to reweigh the evidence in a manner more favorable to her—arguments that are insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."). Plaintiff's argument, therefore, fails.

Plaintiff next asserts that remand is warranted because the ALJ's decision did not address Plaintiff's post-hearing vocational opinion evidence purporting to show that the hypothetical RFC limitation to no bright lights above office lighting is equivalent to a workplace accommodation, and that office noise is essentially subjective. *See* ECF No. 13 at 18-19 (citing Tr. 390-407). Contrary to Plaintiff's assertion, remand is not warranted simply because Plaintiff's vocational opinion evidence was not discussed in the ALJ's decision. Indeed, the ALJ was not required to discuss every shred of evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). In any event, the Court finds that Plaintiff's vocational opinion evidence does not undermine the ALJ's step-four decision, as explained further below.

First, the hypothetical RFC limitation to no bright lights above office lighting (as reflected in the actual RFC), does not suggest a workplace accommodation and neither the VE nor the ALJ's decision required such an accommodation. *See Cheryl E. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0867 (ML), 2021 WL 5964890, at *3 (N.D.N.Y. Dec. 15, 2021) (affirming both the RFC allowing plaintiff to tolerate up to a moderate noise intensity level and occasional exposure to light brighter

than that typically found in an indoor work environment due to migraines and the VE's testimony that plaintiff could return to past work as a health claims specialist); *Barnes v. Comm'r of Soc. Sec.*, No. 20 CIV. 1195, 2021 WL 3771990, at *4 (S.D.N.Y. Aug. 24, 2021) (affirming RFC limiting plaintiff's exposure to excessive noise and vibration, bright lights, fumes, temperature extremes, mold and paint vapors due to migraines, allergies and sinusitis).

To the extent Plaintiff argues that there is an unresolved conflict between the Dictionary of Occupational Titles (the "DOT"), which is silent as to lighting, and the VE's testimony, Plaintiff's argument is meritless. *See* ECF No. 13 at 18-19. SSR 00-4p requires an ALJ to resolve any apparent conflicts between a VE's testimony and the DOT before relying on the VE's testimony. Because the DOT is silent on the issue of lighting, there is no conflict with the VE's testimony, and the ALJ was entitled to rely on the VE's testimony. *See Daigle v. Saul*, 2020 WL 5793354, *8, n.8 (D. Conn. September 28, 2020) (finding that "given the relative silence of the SCO on lighting questions, there was no conflict between the expert's testimony and the DOT; it was reasonable for the ALJ to rely on the expert's professional experience in determining relative lighting of the listed jobs").

Second, unlike lighting, the DOT does address noise levels.[2] Tr. 63. Because the DOT describes the noise level of Plaintiff's past work as a customer service representative as moderate, which is less than loud, the job is within the parameters of the ALJ's hypothetical RFC precluding Plaintiff from working in an environment with loud noises. Tr. 19. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (An ALJ may rely on a vocational expert's testimony regarding a

---

[2]   The Selected Characteristics of Occupations ("SCO"), which is part of the DOT defines noise intensity level for each profession, grading each job on a five-point scale from "very quiet" through "moderate" to "very loud," and providing illustrative examples of each noise level. See generally U.S. DEPT OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES (1993).

hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion). For all of these reasons, Plaintiff's challenge to the VE's testimony fails, and the Court finds no error.

### C.  The ALJ Properly Considered Plaintiff's Subjective Complaints and Work History.

Plaintiff's final point argues that remand is warranted because the ALJ did not consider her testimony regarding the pattern and frequency of her headaches and her strong work history. *See* ECF No. 13 at 17-18, 20-22. Both arguments are unavailing. Contrary to Plaintiff's argument, the ALJ properly assessed Plaintiff's subjective complaints in the context of the entire record, not just her work history. *See* 20 C.F.R. § 404.1529 (c)(1)-(2); SSR 16-3p, 2017 WL 5180304. While the ALJ must take Plaintiff's claims into account, she need not accept subjective complaints without question. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ exercises discretion in weighing the consistency of Plaintiff's allegations in light of the other evidence in the record. *Id*.

As discussed above, the ALJ noted that Plaintiff's claims of disabling symptoms and limitations were inconsistent with treatment notes from Plaintiff's treating providers. Tr. 19-22. Contrary to Plaintiff's assertion, the ALJ also considered Plaintiff's testimony with regard to her frequent headaches, which the ALJ heard firsthand at the hearing. Tr. 19, 21- 22, 32-54. Accordingly, Plaintiff's assertion that the ALJ did not consider the frequency and pattern of her headaches is meritless.

The ALJ also reasonably considered Plaintiff's self-reported activities of daily living during the relevant period, including cooking, cleaning, shopping, laundering clothing, performing self-care, managing money and driving, and found that her statements regarding the intensity, persistence and limiting effects of her symptoms were only partially supported by the evidence.

Tr. 22, 336-41, 519, 1023. *See* 20 C.F.R. § 404.1529(c)(3)(i), 416.929(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) (holding consideration of daily activities appropriate in determining capacity for basic work activities).

Plaintiff's assertion that the ALJ erroneously relied on her reported daily activities because her ability to perform them does not show that she could perform work on a regular and continuous basis is similarly meritless. *See* ECF No. 13 at 13-14. The ALJ did not rely on Plaintiff's daily activities to show that she could perform full-time work at the level of the RFC, but rather to demonstrate that Plaintiff was not as debilitated by her impairments as she alleged. Moreover, the ALJ made this finding in combination with consideration of the medical evidence and Plaintiff's reports that contradict her allegations of greater debilitation. Such an analysis is entirely proper and consistent with the governing regulations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

With respect to Plaintiff's assertion that the ALJ did not consider her work history (*see* ECF No. 13 at 20-22), the ALJ's step-four finding indicates that she recognized Plaintiff's work

history. Tr. 23. *See Motyka v. Colvin*, No. 15-CV-54S, 2016 WL 6067846, at *5 (W.D.N.Y. Oct. 17, 2016) (finding that although the ALJ did not discuss plaintiff's work history, he did not ignore it as evidenced by his conclusion that plaintiff retained the RFC to return to his past work as he previously performed it). That Plaintiff's work history was not specifically referenced by the ALJ does not undermine her assessment given the substantial evidence supporting her decision. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (94 (noting that the ALJ was well-aware of the claimant's good work history and holding that the ALJ's failure to specifically mention it in the decision did not undermine the subjective allegations analysis). Here, as shown above, regardless of Plaintiff's prior work history, the ALJ discussed other pertinent factors in finding Plaintiff's subjective allegations not entirely consistent with the record as a whole. Based on the foregoing, the ALJ's factual findings regarding Plaintiff's subjective claims were supported by substantial evidence. As such, remand is not warranted.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448

(emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE